BOYNTON *vs.* NELSON.

46 501
f121 156

[REMOVAL OF EXECUTOR.]

1. *Probate court, order of removing executor; when void.*—An order of the probate court removing an executor made at a special term to which the cause was not adjourned or appointed, is void.

2. *Same; what order not grantable as of course.*—Such an order is not one which is grantable of course in the contemplation of section 795 of the Rev. Code.

3. *Appeal, right of being lost; how can not be restored.*—A party who has lost his right of appeal, though without fault or neglect on his part, can not restore it through the mere instrumentality of a motion to set

aside the judgment complained of which is overruled. His remedy, where he shows a case for relief, is by *certiorari*, the grant of which is discretionary.

CERTIORARI to the Probate Court of Dallas.

On the 15th day of February, 1869, an order was made by the probate court of Dallas, directing a citation to issue to appellant, as the executor of Alanson Saltmarsh, to appear on the 8th day of March and show cause why he should not give an additional bond, &c. The citation was served on the 18th day of February.

On the 8th of March, Boynton was required to give an additional bond, and allowed until the 12th of April to do so. On the 10th of April the record recites—

"This being the day to which was regularly continued the hearing of the cause, it is again continued until the 10th day of May, 1869. On the 10th of May, by agreement, the cause was again continued until the 24th of May, 1869. No other order was taken in the premises until the 17th day of August, 1869, when the following order was made:

"SPECIAL PROBATE COURT, }
August 17th, 1869. }

A. SALTMARSH, dec'd, estate of. ⎫ W. N. Boynton, the pres-
In the mattter of the removal ⎬ ent executor of said estate,
of the executor of said estate. ⎭ having been duly and reg-
ularly required by an order of this court, made and entered of record on the 8th day of March, 1869, to give bond, as such executor, additional to the bonds which have already been given by him in that capacity, and the said period of time so appointed for the said W. N. Boynton to give such bond having been afterwards extended to the 24th day of May, 1869, and the said Boynton having failed and neglected to file such bond, in accordance with the law and the requirements of said order, it is, therefore, adjudged and decreed, &c. [Here follows the order removing said Boynton, &c., and requiring him to file his accounts and vouchers for a final settlement, &c., within —— days from the date thereof.]"

The order made on the 8th of March, 1869, requiring the additional bond, does not fix the amount, and recites : "It appearing to the court that said bond is probably not now secured as required by law ; it is, therefore, adjudged that said W. N. Boynton be, and he is hereby required, to give a bond, as such executor, additional to the one heretofore given by him."

On the 18th of August appellee was appointed special administrator of said estate, for the purpose of collecting and preserving the assets, &c. It, also, appears from the record, that the 8th day of February, 1869, had been regularly set for the filing of the accounts for a partial settlement, &c. By agreement the settlement was continued on the 1st of March to the 5th of April, and again continued to the 16th day of May, and afterwards further continued until the 24th of May, 1869, on which last day Boynton filed his accounts and vouchers for settlement, when the 29th day of June was appointed to make such settlement, and notice and publication thereof was ordered accordingly. On the 26th day of June the cause was again continued until the 2d of August, when, by consent, it was again continued until the 17th of August. On the 17th of August, the record recites that the parties not appearing the cause is continued until the 24th of August. The cause was thereafter successively continued until the 13th day of September.

On the 15th of September Boynton filed his petition, under oath, praying, among other things, that the order removing him be annulled and revoked, &c., &c. The hearing was successively continued until the 10th day of November, 1869 ; the petition was heard and dismissed at the costs of the petitioner.

After this, Boynton, upon his affidavit stating these facts, applied to one of the justices of the supreme court, in vacation, for a *certiorari* to bring the cause directly before the supreme court for revision, and for a *supersedas* to suspend further action in the probate court in the matter, until the final determination of the cause in this court. The grounds of this petition were, substantially, that the

order removing petitioner from the executorship was made at a special term to which the cause had not been regularly adjourned, and that the time in which an appeal could be taken had elapsed before he became informed of the order. The prayer for *certiorari* and *supersedeas* was granted. At the January term, 1870, a motion was made to dismiss the writ of *certiorari*, and to quash the *supersedeas*, &c., which motion the court overruled.—See *Ex parte Boynton*, 44 Ala. Rep. p. 261.

ALEXANDER WHITE, for appellant.

JOHN WHITE, *contra*.—The counsel for the appellant contends that the removal of an administrator for failing to give an additional bond, is a special and summary proceeding, and that if the record fails to show that the court had jurisdiction its action in the premises is void, and that the record in this case fails to sustain the order of removal when tested by this rule.

For the sake of the argument only, we may admit the principle contended for, but we deny its application to this case. On the contrary, we maintain that this record not only shows the jurisdictional fact, but every fact which was necessary to sustain the decree rendered.

The power conferred by section 2029, is peculiar and extended. The judge is not allowed to wait as in ordinary cases, till some interested party invokes his action, but he is required to act *mero motu*, and even upon mere impressions made on the mind of the judge from any source whatever. The language is, "when the judge has reason to believe that * * an additional bond should be required," &c. Now, the court in making the order in this case, does not use this exact language, but says what is certainly equivalent to it, and in fact goes beyond it. The record says, "it appearing to the court that the said trust is probably not now secured as required by law." If this be so, has not the judge reason to believe that an additional bond should be required? Is the latter language as strong as that of the record? One is the bare assertion,

Boynton v. Nelson.

that there is reason to believe a certain fact, the other is a statement of the facts on which this opinion is founded, and are amply sufficient to sustain it; for if it appears that the trust is not probably secured as required by law, the judge certainly has reason to believe that an additional bond should be required.

On the day appointed by citation, &c., what is the issue to be tried? The question of the sufficiency of the bond of the administrator. On whom is the burden of proof? Section 2039 says, " If no sufficient cause be shown (by the defendant, of course,) why he should not be required to give an additional bond, the court must make an order to that effect." This statute does not require proof that the bond was taken on insufficient security, or that it had become insufficient, but it demands of the administrator that *he* show that it is sufficient. But the order in this case does not rest upon this, for it recites that the court, *after investigation*, is fully satisfied that the bond is insufficient—thus deciding and setting forth the jurisdictional fact.

It is contended by the appellant that the order of the probate court is void, because it is (as he claims,) not made by the probate court sitting at a regular, adjourned, or special term, but by the judge, acting as such in vacation.

A regular term of the probate court is required to be held on the second Monday in each month, and the judges are authorized to hold special or adjourned terms at any time, whenever necessary for any special purpose.—Rev. Code, § 795.

The order in question was, we think, an order "of course," within the meaning of the last named section, as is fully shown by the argument of our associate counsel.

But if this court should hold that it is necessary to the validity of an order like this, that the judge should be sitting as a court, and holding either a regular, or a special, or adjourned term, and that it must be so certified upon the record, we think the order comes fully up to these requirements.

33

What is a special term, and how is it to be certified upon the record? I think that a special term is a term held by the judge at a time other than that set for holding the regular term, for a *special purpose*. He is authorized to hold these terms at any time, whenever *necessary*. Of this necessity he is the proper and the only judge, and his decision on the subject is final. But counsel say, that a special term must be *appointed*, set before hand. The statute uses no such terms, but employs the very expressive words, "*hold* at any time." This the judge can do, and he must certify on the record that it is a special term,—which is done in this case. The entry is : "Special Court of Probate, August 17, 1869."

The order in the case of *Moore v. McGuire* was held void on account of the absence of any entry of this kind. After saying that the order was made, "there being no term of the court then being held," the court continue : "He must be sitting as a court, and holding either a special or adjourned term, which must be certified on the record." In that case there could have been no such certificate. In this, there was the only certificate which the probate courts ever make of the holding of either a special or an adjourned term, or regular term.

In *Wightman v. Karsner*, it is not pretended that the record, which contained just what this does as to a special term, was not a sufficient certificate that it was a special term, but the case went off on the ground that the court could hold no special term at all. —20 Ala. 446.

Notice must be given of the holding of a special term of the circuit and chancery courts only because the law authorizing them to be held requires it ; but there is no such requisition as to the special terms of the probate court.

But a special term of the court was in fact appointed for the 17th of August, by the order of the 2d of that month continuing Boynton's settlement to that day, and the court had authority to take up this matter, unless it is necessary to the regularity of such a term that it should be appointed in advance for a special purpose, and that nothing else can be disposed of,—which is not the law.

The law takes notice of the fact that the regular terms of the probate courts are held on the second Monday of each month, but the courts can not know when they adjourn; therefore, in the absence of an order showing that a special term was held, his order will be presumed to have been made at the regular August term, for every presumption is indulged in favor of the regularity of what was done. The argument in favor of the administrator is, that this order was not made at any term, regular or special. The 9th of August was the time set for holding the regular term, and it will be presumed to have continued till the 17th of the month, unless the order of the latter date shows that a special term was then held. So that it was a regular term, unless it was a special term; but if it was either, the order was made at a *term*, and is not void because made in vacation. —*Harrison v. Meadows*, 41 Ala. 274, 278–9.

A little reflection will furnish an obvious and conclusive answer to the position that the failure to continue the proceeding to the 17th of August, 1869, was a discontinuance, and deprived the court of its jurisdiction over the case.

The executor had legal notice to appear on the 8th of March and show cause why he should not be required to give an additional bond. This was really the day on which the case was *tried*, and *determined* against him. The issue was, whether he should be required to give an additional bond, or rather, whether his bond was a good one. Of the trial of this issue he had notice, and failed to appear, but the court proceeded (as it had the power to do,) to hear and determine it; and decided it against him. This being done, the judgment necessarily followed that he should give another bond by a certain time. This was in fact a trial and determination of the cause, and the only thing which remained to be done was a compliance on the part of the defendant with the order of the court. This he failed to do, and by such failure subjected himself to removal at any time, and without further notice. He was brought into court by the original notice, and was in law in court, and bound to take notice of all orders made in

the premises.  For instance, when the order was made re-
quiring him to give an additional bond within a certain
time, he was not present, but it is not pretended that he
had any right to notice of that order.  Why so ?  Because
he was, in contemplation of law, in court.  Just so with
the order of removal ; if it was otherwise regular, he was
bound to take notice of it, and therefore can not complain
that he had no notice.—*Harrison v. Meadows*, 41 Ala. 274 ;
*Duffie v. Buchanan*, 8 Ala. 27 ; *Williamson v. Hill*, 6 Porter,
184.

The case in 41 Ala. is precisely in point; there was no
continuance of the proceeding from the 25th of June, 1861,
when the order of distribution was made, to the 15th of
July, 1861, when a decree was rendered against the ad-
ministrator ; yet the court hold that the administrator
must be held to be in court, and to have notice of the de-
cree.—41 Ala. 278.

Besides all this, the executor was in default, if not in
contempt, and can not set up his own omission of duty as
a reason why the order is not valid.

On being required to give an additional bond within a
certain time, and a failure to comply on the part of the
defendant, he may be removed at any time.  If not, when
must the court remove him ?  Can it do so on the last day
allowed him to give bond ?  Not so, for he has the *whole*
of that day to comply with the order.  Can it remove him
on the next day ?  Not if the argument of the appellant is
correct, for the case was only continued to the day before,
which in this case was the 12th of April, or perhaps the
24th of May.  But the fact is, the court can remove him
at any time after the expiration of the time allowed him
to give the bond.  For if it can not do this, it can not re-
move him at all, not having the power to remove within
the time.

By failing to obey the order, the removal of the execu-
tor follows of necessity and as a matter of course.

The usual and proper order in cases of this kind is, that
the administrator is required to give an additional bond,
and that he be allowed a certain time to do so, and this is

Boynton v. Nelson.

all; there is no order for a continuance, nor is one proper; there is nothing to continue; the cause has been fully tried and determined.

B. F. SAFFOLD, J.—This case was brought to this court by *certiorari*, under the following circumstances: On the 15th of February, 1869, W. N. Boynton, the executor of the will of Alanson Saltmarsh, was cited by the probate judge to show cause, on the 8th of March, why he should not be required to give an additional bond. At that time, he was ordered to give the bond by the 12th of April. From this last date the cause was successively continued to the 24th of May, when no action at all was taken. At a special term held on the 17th of August, an order was made removing Boynton.

While this proceeding was pending, another was progressing to require the executor to make a settlement of his administration. It commenced on the 25th of January, 1869, by an order to him to file his accounts for settlement by the 8th of February. It was successively continued to the 24th of May, when the accounts were filed and set for hearing on the 26th of June. The cause was continued to the 2d, 17th, 24th and 31st of August, and then to the 13th of September, when no action was taken.

On the 15th of September, Boynton applied to the court by petition to set aside the order removing him for the reasons therein stated. The hearing was appointed for the 22d of September, and was continued to the 6th and 19th of October, and the 5th and 10th of November, when it was overruled.

Nelson was appointed special administrator on the 18th of August, the day after Boynton was removed.

Upon the overruling of his petition, Boynton applied to one of the justices of this court for a *certiorari* to review the action of the probate court removing him from his executorship, on the ground, mainly, that it was void because the order of removal was not made at a regular term of the court; but at a special term to which the cause had not been adjourned, and the time in which an appeal

might have been taken had elapsed before he became informed of such order.

The proposition is undeniable that the acts of a court held at a time and place not authorized by law are absolutely void.—Bouv. Law Dict., Judgment. Was the probate court authorized to make the order which it did on the 17th of August, 1869? Its powers of holding courts are appointed by section 795 of the Revised Code. "A court of probate must be held at the court-house of each county on the second Monday in each month, and the judges may hold special or adjourned terms, at any time whenever necessary for any special purpose; but such courts must at all times be considered as open, except on Sundays, with authority to do all things needful in relation to granting letters testamentary, of administration, or guardianship, and all matters appertaining thereto; binding out apprentices, and making all other necessary orders, which are grantable as a matter of course."

In aid of the validity of judgments of courts of general jurisdiction, which the probate court is, many intendments or presumptions are indulged. For instance, the acts of a court will be presumed to have been made at a proper term, unless the reverse appear; and in collateral, or even direct assaults, when the purpose is to have them declared void, the record itself must exhibit the error.—*Duval's Heirs v. McLoskey*, 1 Ala. 733. But when the record shows facts which are inconsistent with the validity of the judgment, the jurisdiction can not be presumed from its mere exercise. Again, from the service of process until the final judgment, the parties are presumed to be in court, and need no further notice of orders taken in the cause.—*Harrison v. Meadows*, 41 Ala. 278. But these orders must be such as the court may legally grant at the time. If they appear from the record to be otherwise they are invalid.

Section 2090, Revised Code, adds the probate judge to the list of those who may require an additional bond of an executor or administrator on proof of one or more of the grounds specified in section 2018. These proofs are to be heard by the court on the day specified in the citation to

the executor, or administrator, or any day thereafter to which the hearing may be continued.—§ 2024. If the bond be required, an order to that effect must be made, allowing such time as the court may think reasonable.—§ 2027. If it be not given within the time prescribed, the executor or administrator must be removed by the court, and his letters revoked.—§§ 2028–29.

I imagine no appeal can be taken from the order requiring the additional bond, because none is expressly given, and it is not a final order. The party can not be said to be injured, unless he is removed. Besides, if he give the bond, his liability is not thereby increased beyond what it should be, and if he fail to do so he has his remedy on his appeal from the order removing him.

It is plain from § 2024, above cited, that the order requiring the bond can not be made at any special term different from that specified in the citation, or that to which the cause may be continued. It is claimed, however, in this case, that the order of removal, after the failure to give the bond at the time appointed, was grantable as a matter of course on any day except Sunday.

The authorities cited in support of this proposition are sections 2028, 2029, which say the letters must be revoked, and *Arrington v. Roach*, 42 Ala. 155, to the effect that " All orders which are made without notice, and are necessary, are to be considered as grantable, as matters of course." These authorities cannot be said to conclude in this respect a solemn decree divesting a party of a right, and an interest in property, acquired by the act of another, from which he may appeal directly, and which was not rendered in response to any motion or application made by him. The removal of an executor without notice is void.— *Goodwin, ex'r, v. Hooper*, January term, 1870.

It was important to this executor that he should have had notice, actual or constructive, of the time when the order removing him was made, because the amount of the new bond required of him does not appear to have been fixed, and perhaps on that may have depended his ability to give it. Besides, his right of appeal continued only for

five days. In both of the cases, *Harrison v. Meadows*, 41 Ala. 278, and *Allman v. Owen*, 31 Ala. 167, cited by the appellee in support of his proposition, much stress was laid upon the fact that Boynton had constructive notice,. that the· assignments of error were not sustained by the record. In the first there· was no entry, or other thing of record,. showing that the decree was rendered at a special term ;. and, therefore,. it was presumed to have been rendered at a regular term. In the other, the decree alleged to have been rendered in vacation, was shown by the record to have been rendered when a regular term ought to have been held. The plain inference from these cases is that the decrees would have been held void if the allegations had been properly supported.

No aid to the presumption of notice can be derived from the fact that the times appointed for the partial settlement coincided twice with those directed for the consideration. of the question of removal, to-wit, the 10th and 24th of May, and that this settlement was regularly continued to the 17th of August, when the order of removal was made. Beginning prior to the demand for a new bond, the settlement was continued along with many postponements to intervals only a few days apart from the other, without any allusion at any time, in the one to the other. There was no necessary connection between them, nor did the court or the parties seem to treat them as in any way connected. On the 24th of May, Boynton was present, and filed his accounts, but no action was taken in the other. The settlement at that time was appointed for the 26th of June, and was continued to the 2d and 17th of August, and on to the 13th of September, when it was abandoned, to give place to the final settlement consequent upon the removal.

No. action was taken on the proceeding, in reference to the bond, from the 24th of May until the 17th of August, when, as shown by the record, at a special term held that day, he was formally removed, for failing to comply with the order of the 8th of March, 1869, which had been extended to the 24th of May. This decree not only fails to state that the cause had been continued to this day, but

the plain meaning of the recitals is that nothing had been done in the matter since the 24th of May. We know judicially that a regular term could not commence on that day, and we cannot presume that there was a continuation of such a term, because the record says it was a special term. The decree of removal is, therefore, void, from having been rendered at a special term, to which the cause had not been adjourned or appointed.

We are asked to review the former judgment of this court overruling the motion to dismiss the *certiorari*. The ground of this request is, that Boynton had the right of appeal from the judgment adverse to his application to set aside the order removing him. It is alleged correctly that this court has frequently entertained appeals brought here under similar circumstances, and the case of *Satcher v. Satcher*, (41 Ala. 26,) is cited as an instance. In none of these cases does there appear to have been any question made on the right of appeal. Besides, the rule of practice, that no errors will be considered except such as are assigned, this court has been disposed to terminate the litigation by a decision of the merits of a cause, unless the irregularities of practice are sufficiently great to produce confusion.

*Hayes v. Cockrell*, (41 Ala. 75,) and *Garrison v. Burden*, (40 Ala. 5.3,) are cases in which the appeals were dismissed at the cost of the appellants, because the judgments appealed from were void, ascertained to be so after a careful consideration of the merits of the causes. In this case the question was one of nullities. If the removal of Boynton is valid, an order setting it aside would be void; and hence, on Nelson's appeal he would have lost his suit by the establishment of his right. The final judgment, order or decree which will support an appeal, in the contemplation of the statute, is one rendered upon some matter or proceeding in the court upon which a decree may be rendered, and from which either party may appeal if the decision be adverse to him.

While we would not follow the authorities above cited in 40th and 41st Alabama, so far as to dismiss an appeal taken

to reverse a judgment which we decided to be void, we can not subscribe to the doctrine that a review of all the judgments and decrees of the various courts of this State, for an indefinite past time, may be forced on this court through a right of appeal obtained by a mere motion to set them aside made in the lower courts. *Certiorari* is a common-law writ of review. Its grant is discretionary, and on this account the judge, or court, is enabled to stop on the threshold a proceeding which promises to be unjust and vexatious. While a party who has a right of appeal should be confined to that remedy, his privilege of obtaining a *certiorari* is not taken away by implication merely. To deny him the latter in a case calling for relief, when the appeal is lost without fault on his part, is a refusal of justice. To enable him to restore his right of appeal, when it may have been lost through his neglect, by a motion to set aside the judgment of which he complains, is to accord him more than his right, to the detriment of the opposite party. From these considerations, we think our former decision was right.

The order of the probate court is reversed, and the cause remanded.